**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| Cindy A. Roth, Richard D. Roth, <br><br>the Estate of Jason S. Roth, by its personal representative, Cindy A. Roth, <br><br>   Plaintiffs, <br><br>v. <br><br>United States of America, <br><br>   Defendant. | Civil Action No.: _____ <br><br>**COMPLAINT** |

The Plaintiffs Cindy A. Roth, individually and as the Personal Representative of the Estate of Jason S. Roth, and Richard D. Roth, bring this complaint against the United States of America and would respectfully show unto this Honorable Court:

## INTRODUCTORY STATEMENT

Contrary to its mission statement, the Veterans Affairs Administration is not caring for our Nation's veterans. The VA's mission statement comes from President Lincoln's second inaugural address, where he declared (and the VA subsequently promised) that it was the obligation of the federal government "*to care for him who shall have borne the battle and for his widow, and his orphan*." Those words ring hollow today. Those tasked with the sacred obligation to care for our Nation's veterans have failed miserably as the facts of this case will demonstrate.

This is a case about a young Marine who served his country on the battlefields of Afghanistan, was mentally injured while in battle, and was honorably discharged into the care of the VA. As a result of legally deficient care provided by the VA, the young Marine's mental

1

anguish led him to take his own life, depriving him of his future and his mother and father of their son's love.

## PARTIES, VENUE, AND JURISDICTION

1. Lance Corporal Jason S. Roth ("Roth") bravely served in the United States Marine Corp during the war in Afghanistan; he was honorably discharged on July 27, 2012. He took his life on November 17, 2013. He was 24 years old.

2. In 2008, Roth graduated from Blue Ridge High School in Greer, South Carolina.

3. After enjoying two months of summer, and as planned, Roth entered basic training at Marine Corps Recruit Depot Parris Island, South Carolina. Upon his successful completion of basic training, Roth then attended infantry school at Camp Lejeune in Jacksonville, North Carolina.

4. Cindy A. Roth is the probate court appointed personal representative of the Estate of Jason S. Roth, by way of an Order from the Greenville County Probate Court.

5. Cindy A. Roth is the mother of Roth ("Mrs. Roth").

6. Richard D. Roth is the father of Roth ("Mr. Roth").

7. Mr. and Mrs. Roth live in Travelers Rest, South Carolina.

8. Roth was not married at the time of his death, and he has no children.

9. Mr. and Mrs. Roth are plaintiffs in this wrongful death action as a result of their statutory status as the beneficiaries of the Estate of Jason S. Roth.

10. Mrs. Roth, as the Personal Representative of the Estate of Jason S. Roth is a plaintiff in the survivorship claim as a result of her status as the personal representative.

11. The United States of America is the defendant because employees of the Veterans Administration ("VA") breached their duty of care and committed medical malpractice, which resulted in the suffering and wrongful death of Roth.

12. Roth died in his parents' home located in Travelers Rest, South Carolina.

13. Roth was treated by the VA in Greenville, South Carolina.

14. Venue is proper in the Greenville Division as the United States of America is a defendant, Plaintiffs reside in Greenville County, and a substantial part of the events and omissions giving rise to this case occurred in Greenville County. 28 U.S.C. § 1391(b)(2), and (e).

15. This Court has jurisdiction over the defendant and this action based upon the Federal Tort Claims Act. 28 U.S.C. § 1346(b)(1), 28 U.S.C. §§ 2671-80.

## BACKGROUND

16. Roth was deployed to Afghanistan to fight the war on terror.

17. Roth received the Afghanistan Campaign Medal with two Bronze Service Stars, the Global War on Terrorism Expeditionary Medal (Classified), and the Marine Corps Good Conduct Medal, among many others.

18. During his deployment in Afghanistan, Roth was the target of an improvised explosive device.

19. Roth was subsequently diagnosed with traumatic brain injury ("TBI") and post-traumatic stress disorder ("PTSD"). These diagnoses were made while Roth was on active duty.

20. Roth was honorably discharged from the Marine Corps on July 27, 2012. Roth returned home to Travelers Rest, South Carolina, and was placed into the care of the VA.

21. On or about August 28, 2012, a VA medical employee met with Roth to conduct a case management assessment. At this assessment, VA records show that Roth discussed his TBI with a VA employee and a request for TBI therapy was entered into the VA database.

22. Based upon this assessment and the discussion with the VA employee, Roth was informed and believed that he would soon be treated for his disabling TBI. Roth discussed his hope to recover from the side effects of TBI with his fellow veterans and his parents.

23. Roth would later express frustration that he was on a never ending "waiting list." He complained to the VA about the wait time on or about October 4, 2012, noting that he was "not satisfied with an almost 3 month delay in care."

24. During the just over one year that Roth was in the care of the VA he was ***never*** admitted for TBI therapy.

25. Roth was never admitted for TBI therapy because two days after being told he was being signed up for it, a VA medical employee inexplicably took him off of that list, without speaking with him or physically evaluating him, based upon that employee's review of his *battlefield medical records*.

26. Had the VA medical employee physically seen Roth, or even spoken with him, that employee would have learned that he was seriously ill suffering from TBI, with symptoms including but not limited to ringing in his ears, vertigo, and short-term memory failures. Indeed, the VA had already rated him 70% disabled based upon his TBI injury.

27. No one at the VA ever told Roth that he was taken off of the TBI waiting list.

28. Until his death, Roth believed that he was on the TBI waiting list.

4

29. Roth discussed the fact that he was on the waiting list with many of his friends and family, all of whom believed it was just a matter of time before the VA would begin treating him.

30. Roth's death was caused by the VA's failure to treat him for TBI. (Expert Affidavit of Dr. Salas, ¶16, incorporated herein and attached as *Exhibit 1*).

31. While Roth believed he was waiting for TBI therapy, he was also being treated by mental health providers at the VA. Specifically, Mr. Roth was treated by VA psychiatrist Katherine A. Larson, MD. Further references to VA mental health refer to Dr. Larson and her team of staff personnel at the VA.

32. On or about September 5, 2012, Roth participated in an introductory group therapy session at the VA. During this session he identified his parents (Mr. and Mrs. Roth) as persons with whom his mental health could be discussed.

33. A treatment plan was created and as part of this treatment plan, Roth also specifically identified his father as his care partner, and provided his father's phone number and address for contact purposes.

34. As part of the mental health therapy, Roth was prescribed psychological medications to help him with his PTSD.

35. The VA records indicate that he was compliant with his scheduled appointments and medications through January of 2013.

36. At the January appointment, the VA psychiatrist apparently concluded Roth's medications were not effective and decided to change Roth's medications.

37. The next month Roth had to cancel an upcoming appointment and he notified his case manager of this schedule change.

38. On or about February 22, 2013, however, the VA mental health noted that Roth was a no-show for his appointment. The VA mental health tried to reach Roth by telephone but did not speak with him directly. The VA mental health made no effort to comply with Roth's treatment plan and reach out to his care partner—his father.

39. The records of the mental health providers do not indicate they had any contact with Roth between February and July of 2013.

40. In failing to follow-up with Roth when he had just received different medications, the VA psychiatrist failed to properly monitor Roth's medication.

41. Roth was also seen by VA primary care. Specifically, Joseph B. Beraho, MD was Roth's primary care provider. Future references to VA primary care include Dr. Beraho and his staff of nurses and support staff.

42. On or about April 18, 2013, Roth was treated by VA primary care. At that time, the VA doctor recorded that Roth had lost his "Sergeant" to suicide and that Roth had poor compliance with his psychological medication. This information was not shared with Roth's VA mental health providers.

43. The primary care provider's failure to communicate key information to the mental health care providers was a contributing cause of Roth's death. (Expert Affidavit of Dr. Salas, ¶17).

44. Roth did not interact with VA mental health again until he scheduled an appointment in August of 2013. Ultimately, Roth did not make that appointment either. In turn, the VA psychiatrist tried to reach him by phone but his phone was claimed to be disconnected. As a result, the VA psychiatrist instructed support staff to merely mail Roth a letter.

45. The VA mental health did not contact Roth's care partner at that point in time either. This failure was direct violation of Roth's treatment plan.

46. The VA records show that VA mental health providers did not review his primary care notes.

47. The VA mental health care provider's failures were a contributing cause of Roth's death. (Expert Affidavit of Dr. Salas, ¶18).

48. For the entirety of the time that Roth was in the care of the VA, it is quite clear that he was suffering tremendously in a broken system which caused his death. (Expert Affidavit of Dr. Salas, ¶¶16-18).

49. Plaintiffs timely filed a Form 95 administrative claim with the VA on January 16, 2015.

50. On June 30, 2015 the VA denied the administrative claim.

## FOR A FIRST CAUSE OF ACTION
## (WRONGFUL DEATH/MEDICAL MALPRACTICE)

51. Plaintiffs incorporate herein all of the previous allegations, and restate the same.

52. This wrongful death action is brought pursuant to S.C. Code Ann. §§ 15-51-10, et seq., on behalf of the heirs of Roth.

53. The United States of America is the proper defendant because the employees of the VA were acting within the scope of their employment. 28 U.S.C. §2671.

54. The VA primary care providers and the VA mental health providers owed a duty of care to Roth to provide him with the degree of care and skill which is ordinarily employed by the profession generally under similar conditions and like surrounding circumstances.

55. The VA primary care providers and/or the VA mental health providers breached that duty of care in the manner described above and incorporated herein, and as follows:

A. Inexplicably cancelling the requested TBI therapy, and not providing Roth with clinical consultation for persisting TBI symptoms;

B. Failing to communicate to Roth that it had cancelled his TBI therapy;

C. The VA primary care team's failure to communicate key information regarding Roth's social stressors, implementation of negative coping skills, and noncompliance with prescribed psychotropic medications to the VA mental health care team;

D. The VA mental health care team's failure to adequately monitor Roth's response to prescribed medications;

E. The VA mental health care team's failure to review Roth's medical records on or about April 23, 2013, and act on the key information contained in those medical records as inputted by the VA primary care team; and

F. The VA mental health team's failure to contact Roth's parents and his care partner (father) when multiple efforts to make direct contact with Roth were unsuccessful.

56. The VA primary care providers and/or the VA mental health providers breached their duty of care to Roth through their acts and omissions, which was a direct and proximate cause of the injuries, suffering, and death of Roth.

57. As a result of the breach of these duties, Roth's surviving heirs have suffered and continue to suffer great mental shock, anguish, distress, wounded feelings, grief, sorrow, loss of support, and deprivation of the use, love, and comfort of Roth, their only son.

58. Based upon the VA primary care providers and/or the VA mental health providers' breaches of the duty of care/medical malpractice, Plaintiffs are informed and believe they are entitled to an award of actual and consequential damages.

59. Based upon the breach of the duty of care/medical malpractice of the VA primary care providers and/or the VA mental health providers, the United States of America is liable for damages because these providers' actions and omissions occurred while they were acting within the scope of their employment/service under the doctrine of Respondeat Superior. 28 U.S.C. §2674.

## FOR A SECOND CAUSE OF ACTION
### (SURVIVAL ACTION/MEDICAL MALPRACTICE)

60. Plaintiffs incorporate herein all of the previous allegations, and restate the same.

61. S.C. Code Ann. §15-51-90 provides a legal claim for the estate of a decedent when a person suffered from personal injuries during their life, that person ultimately dies, and the personal injuries suffered during their life were tortuously caused by another.

62. The VA primary care providers and/or the VA mental health providers breached that duty of care in the manner described above and incorporated herein, and as follows:

   A. Inexplicably cancelling the requested TBI therapy, and not providing Roth with clinical consultation for persisting TBI symptoms;

   B. Failing to communicate to Roth that it had cancelled his TBI therapy;

   C. The VA primary care team's failure to communicate key information regarding Roth's social stressors, implementation of negative coping skills, and noncompliance with prescribed psychotropic medications to the VA mental health care team;

9

  D. The VA mental health care team's failure to adequately monitor Roth's response to prescribed medications;

  E. The VA mental health care team's failure to review Roth's medical records on or about April 23, 2013, and act on the key information contained in those medical records as inputted by the VA primary care team; and

  F. The VA mental health team's failure to contact Roth's parents and his care partner (father) when multiple efforts to make direct contact with Roth were unsuccesful.

63. The VA primary care providers and/or the VA mental health providers breached their duty of care to Roth through their acts and omissions, which was a direct and proximate cause of the injuries, suffering, and death of Roth.

64. As a result of the breach of these duties of care/medical malpractice, Roth suffered from the side effects of TBI and PTSD during the year that he was in the care of the VA, and was not properly being treated. And, this total lack of proper care and resulting suffering are what led to his ultimate death.

65. Based upon the VA primary care providers and/or the VA mental health providers' breach of the duty of care/medical malpractice, Plaintiffs are informed and believe that the Estate of Jason S. Roth is entitled to an award of actual and consequential damages.

66. Based upon the breach of the duty of care/medical malpractice of the VA primary care providers and/or the VA mental health providers, the United States of America is liable for damages because these providers' actions and omissions occurred while they were acting within the scope of their employment/service under the doctrine of Respondeat Superior. 28 U.S.C. §2674.

**WHEREFORE**, having set forth its complaint against the United States of America for the tortious acts of its employees and agents, Plaintiffs hereby request a trial on all of the issues that have been or may hereafter be raised in any of the pleadings. Plaintiffs further seek judgment against Defendant for:

A.  Actual and consequential damages as to each independent cause of action;

B.  The costs of and disbursements of this action; and

C.  Such other and further relief as this Court deems just and proper.

Respectfully submitted,

NEXSEN PRUET, LLC

*s/William W. Wilkins*
William W. Wilkins     (Fed. Id. No. 4662)
Burl F. Williams       (Fed. Id. No. 10556)
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
Telephone: (864) 282-1165
bwilkins@nexsenpruet.com
bwilliams@nexsenpruet.com

*Attorneys for Plaintiffs*

December 17, 2015